535 A.2d 477

**David W. BOULDEN**

v.

**The MAYOR AND COMMISSIONERS OF the TOWN OF ELKTON.**

**No. 76, Sept. Term, 1987.**

Court of Appeals of Maryland.

Jan. 12, 1988.

Craig P. Morton, Elkton and (John Wheeler Glenn, Baltimore, on the brief), for appellant.

No brief filed for appellee.

Argued before MURPHY, C.J., and ELDRIDGE, COLE, RODOWSKY, McAULIFFE, ADKINS and BLACKWELL, JJ.

MURPHY, Chief Judge.

This case involves a claimed conflict between two legislative enactments, each purporting to govern the right of appeal to a circuit court from decisions of a board of appeals. One enactment is a public general law, codified as Maryland Code (1957, 1983 Repl. Vol.), Article 66B, § 4.08(a), which provides:

> "Any person or persons, jointly or severally, aggrieved by any decision of the board of appeals, or by a zoning action by the local legislative body, or any taxpayer, or any officer, department, board, bureau of the jurisdiction, may appeal the same to the circuit court of the county. Such appeal shall be taken according to the Maryland Rules as set forth in Chapter 1100, Subtitle B."

The other enactment, § 4 of Article 4 of the Town of Elkton Zoning Ordinance, limits the right of appeal to those, including taxpayers, who are "aggrieved" by the decision of the board of appeals.[1]

I

David W. Boulden is a taxpayer and property owner in Elkton, Maryland. Roland Baltazar, Eugene Herman, and Roger Meldrom are also property owners in Elkton. During December 1985 and the early months of 1986, Baltazar,

---

1. The Elkton ordinance provides:
   "Any person or persons, or any board, taxpayer, department, board or bureau of the Town aggrieved by any decision of the Board of Appeals may seek review by the Circuit Court of such decision, in the manner provided by the laws of Maryland and particularly by Article 66B, Annotated Code of Maryland."

Herman, and Meldrom, in separate applications, requested variances for their properties under the Elkton zoning ordinance. At each hearing before the Elkton Board of Appeals on the variance applications, Boulden appeared and spoke in opposition. The Board granted all three variances.

Boulden appealed to the Circuit Court for Cecil County, contending, *inter alia,* that the Board improperly relied on past illegal variances to justify its actions. Asserting that Boulden lacked standing to appeal because he was not "aggrieved," as required by the Town's zoning ordinance, Baltazar, Herman, and Meldrom each moved to dismiss the respective appeals. The court (Rollins, J.) granted the motions. Relying largely on *Bryniarski v. Montgomery Co.,* 247 Md. 137, 230 A.2d 289 (1967), it reasoned that the more stringent provision governing the right to appeal contained in the Elkton ordinance prevailed over the public general law, Article 66B, § 4.08(a). Since the ordinance required aggrievement as a condition of the right to appeal, and because Boulden had not demonstrated that he was "aggrieved," dismissal was held proper.[2] The Court of Special Appeals, in an unpublished opinion, affirmed the judgments. We granted certiorari to consider whether, in light of the public general law, the Town of Elkton, by ordinance, may so restrict the right of appeal.

## II

The Municipal Express Powers Act, Maryland Code (1957, 1987 Repl.Vol.), Article 23A, provides in § 2 that the legislative body of every incorporated municipality in this State "shall have general power to pass such ordinances not

---

**2.** Though relied upon by the court, *Bryniarski* is not apposite to the present controversy. That case concerned an appeal from the board of appeals of a chartered county. *See* 247 Md. at 143, 230 A.2d 289. The applicable statute governing standing to appeal, presently found at Maryland Code (1957, 1987 Repl.Vol.) Art. 25A, § 5(U), required aggrievement of all persons as a condition for appeal. Hence, in *Bryniarski* we had no occasion to consider the dispositive issues of the present case.

contrary to the Constitution of Maryland, public general law ... [or] public local law as they may deem necessary...." Resolution of the present controversy requires that we first determine whether § 4.08(a) gives to a taxpayer the right of appeal from a board of appeals notwithstanding lack of aggrievement. If it does, the question becomes whether § 4 of Article 4 of the Elkton ordinance is contrary to § 4.08(a) and thus in violation of Article 23A, § 2.

### (A)

In interpreting § 4.08(a) we seek to ascertain and effectuate legislative intent, the primary source of which is the language of the statute itself. *In Re Ramont K.*, 305 Md. 482, 484, 505 A.2d 507 (1986). This language must be given its natural and ordinary signification, bearing in mind the statutory aim and objective. *Kaczorowski v. City of Baltimore*, 309 Md. 505, 525 A.2d 628 (1987).

Section 4.08(a) enumerates, in the disjunctive, those who have standing to appeal a decision of the board. Aggrievement is required of only one of the enumerated alternatives, namely, "[a]ny person or persons." All others, including the alternative "any taxpayer," are set forth without this requirement. Quite recently, construing a similar disjunctive phrase, we emphasized that the word "or" serves to establish a contrasting or opposing relationship and to set apart the described alternatives. *Carolina Freight Carriers Corp. v. Keane*, 311 Md. 335, 534 A.2d 1337 (1988). Hence, giving the language of § 4.08(a) its natural and ordinary meaning, no conclusion is possible other than that the legislature intended to give a taxpayer standing to appeal notwithstanding lack of aggrievement. The Court of Special Appeals has twice had occasion to interpret § 4.08(a) and in both cases held, as we now hold, that this section does not require that a taxpayer be aggrieved in order to maintain an appeal. *See Clise v. Phillips Coal, Inc.*, 40 Md.App. 609, 613, 392 A.2d 1177 (1978); *Stephans v. Board,*

41 Md.App. 494, 498, 397 A.2d 289, *rev'd on other grounds,* 286 Md. 384, 408 A.2d 1017 (1979).[3]

### (B)

It is, of course, axiomatic that a municipality may be given power to legislate concurrently with the General Assembly. *Rossberg v. State,* 111 Md. 394, 74 A. 581 (1909). In cases of conflict, however, the public general law must prevail, a rule we enunciated in *Rossberg* at 116, 74 A.2d 581 (quoting 28 *Cyc.* 701) to determine when conflict in fact exists:

" 'Such ordinances must not directly or indirectly contravene the general law. Hence ordinances which assume directly or indirectly to permit acts or occupations which the State statutes prohibit, or to prohibit acts permitted by statute or Constitution, are under the familiar rule for validity of ordinances uniformly declared to be null and void....' "

The alleged conflict in *Rossberg* was between a public general law that forbade the sale of cocaine and a City of Baltimore ordinance that forbade not only the sale, but also the possession, of this drug; the ordinance also provided for more severe penalties than the public general law. We found no irreconcilable conflict between the law and the

---

**3.** We note from a comparison of the histories of § 4.08(a) and § 2.09(a) of Article 66B that both govern zoning appeals; § 2.09(a) does so for Baltimore City, § 4.08(a) for other municipalities. As originally enacted, these sections were nearly identical; both enumerated parties with standing disjunctively and required aggrievement only of "[a]ny person or persons," and not of taxpayers. *Compare* ch. 705 of the Acts of 1927 (origin of § 2.09(a)) *with* ch. 599 of the Acts of 1933 (origin of § 4.08(a)). In 1970 the General Assembly substantially amended what is now § 2.09(a), making aggrievement a requirement for all parties, including taxpayers. *See* ch. 673 of the Acts of 1970. Section 4.08(a), however, although amended by the 1970 Act, was not amended with respect to aggrievement. Thus, on an appropriate occasion for inserting in § 4.08(a) an aggrievement requirement for taxpayers, the General Assembly did not do so. This, we think, evinces clear legislative intent that no such aggrievement is to be read into the statute.

ordinance, holding rather that the ordinance merely imposed additional penalties for the offense.

The *Rossberg* rule became our basic standard, and has remained so to the present day. In *Heubeck v. City of Baltimore*, 205 Md. 203, 107 A.2d 99 (1954), for example, a Baltimore City ordinance prohibited landlords under certain circumstances from evicting tenants whose leases had expired. A public general law permitted such evictions. Employing the test laid down in *Rossberg* we found a conflict between the ordinance and the public general law and declared the ordinance invalid. *Id.* at 210–11, 107 A.2d 99. In *City of Baltimore v. Sitnick & Firey*, 254 Md. 303, 255 A.2d 376 (1969), state law set the minimum wage rate at $1.00 per hour; taverns were exempt. A City of Baltimore ordinance set the minimum wage at $1.25 per hour and did not exempt taverns. Characterizing the City law as supplemental to the State law, we found no irreconcilable conflict between the two. *Id.* at 323–25, 255 A.2d 376. In reaching this conclusion we reviewed our cases in the area of conflict doctrine and stated: "A distillation of the opinions we have cited leaves the residual thought that a political subdivision may not prohibit what the State by general public law has permitted, but it may prohibit what the State has not *expressly* permitted." *Id.* at 317, 255 A.2d 376.

In *County Council v. Investors Funding*, 270 Md. 403, 312 A.2d 225 (1973), we found that a public general law expressly permitted a landlord to evict a tenant after expiration of the lease. Hence, a county code provision making such eviction unlawful was, under *Sitnick*, in conflict and inoperative. *Id.* at 421–23, 312 A.2d 225. In *Rockville Grosvenor, Inc. v. Mont. Co.*, 289 Md. 74, 422 A.2d 353 (1980), a provision of the Horizontal Property Act, Maryland Code (1974, 1980 Cum.Supp.) §§ 11–101 through 11–128 of the Real Property Article, expressly permitted the owner of any property in the State to subject the property to a condominium regime. A county first right of refusal law prohibited, for a two year period, owners by transfer from subjecting their property to condominium conversion. Applying the *Sitnick* principle we found a direct conflict and

therefore invalidated the first right of refusal law. 289 Md. at 99, 422 A.2d 353. More recently, in *Town of Forest Heights v. Frank*, 291 Md. 331, 435 A.2d 425 (1981), the fact that the broader governmental unit (the county) expressly permitted an activity that a municipality prohibited was again decisive. There, the county law expressly permitted individuals to engage in the practice of fortunetelling at specified locations. Citing *Sitnick*, we found the municipal ordinance that completely prohibited fortunetelling within municipal boundaries to be in irreconcilable conflict with the county code. *Id.* at 336–39, 435 A.2d 425.

Section 4.08(a), a public general law, expressly permits a taxpayer to appeal from decisions of a board of appeals notwithstanding lack of aggrievement. Article 4, § 4 of the Elkton Zoning Ordinance requires aggrievement. There is therefore an irreconcilable conflict and the Elkton ordinance, insofar as it limits the right of appeal to aggrieved taxpayers, is inoperative. Hence, the trial court erred in dismissing Boulden's appeals.

JUDGMENTS OF THE COURT OF SPECIAL APPEALS REVERSED; CASE REMANDED TO THAT COURT WITH DIRECTIONS TO REMAND TO THE CIRCUIT COURT FOR CECIL COUNTY WITH INSTRUCTIONS TO VACATE THE ORDERS DISMISSING THE APPEALS; COSTS TO BE PAID BY APPELLEE.