784 A.2d 614

**ELLER MEDIA COMPANY**

**v.**

**MAYOR AND CITY COUNCIL OF BALTIMORE.**

**No. 2184, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

Nov. 1, 2001.

Benjamin Rosenberg (Stanley S. Fine, Lynn E. Ricciardella and Rosenberg, Proutt, Funk & Greenberg, LLP, on the brief) Baltimore, for appellant.

Sandra R. Gutman, Chief Solicitor (Frank C. Derr, Deputy City Solicitor, on the brief), Baltimore, for appellee.

Argued before DAVIS, KRAUSER and WILLIAM W. WENNER (Retired, specially assigned), JJ.

DAVIS, Judge.

At the center of this appeal is whether a poster on the facade of a commercial building towering sixty-four feet over the heart of the business district in downtown Baltimore City constitutes a mural or an advertisement. The location where a depiction of longtime Baltimore Oriole shortstop/third basemen, Cal Ripken, Jr., had hovered above the bustling street below is where, appellant, in this appeal, seeks to become beneficiary to a favorable zoning decision which had allowed the Nike Corporation to prominently display the likeness of the local icon.

Appellant Eller Media Company seeks to reverse the decision of the Baltimore City Board of Municipal and Zoning Appeals (Board) denying appellant's application to retain an existing general advertising sign. The Board denied the application on January 31, 2000 and appellant timely requested judicial review of the decision. The Circuit Court for Baltimore City affirmed the Board's decision in a memorandum opinion and order filed October 16, 2000. Appellant timely appealed from the circuit court's judgment.

Appellant presents three questions for our consideration:

I.    Did the Board err when it held that the 1993 decision did not constitute approval of a general advertising sign?

II.   Did the circuit court err by giving deference to the Board's legal conclusion that the Board's 1993 decision did not constitute approval of a general advertising sign?

III.  Did the Board act arbitrarily and capriciously in treating appellant's Beetle/Volkswagen (VW) sign differently than Mass Transit Communications' (MTC) Ripken/Nike sign and by failing to make sufficient findings of fact to support its conclusions?

We answer all three questions in the affirmative and therefore reverse the judgment of the circuit court.

### FACTUAL SUMMARY

On October 14, 1993, the Zoning Administrator of Baltimore City denied the application of Mass Transit Communications (MTC) to paint a mural on an exterior wall of the building at 28 Light Street. MTC appealed this decision to the Board on the same day. In its appeal, MTC described the proposed project, sponsored by Nike Sportswear, as one in a series of murals in major cities depicting local sports heroes. The mural (Ripken depiction) at 28 Light Street would feature Cal Ripken, Jr., a baseball player for the Baltimore Orioles, and a Nike logo. MTC represented that "[a]dvertising copy *will not* exceed 20% of the total space." The appeal also pointed out that Ripken was approaching the Major League Baseball record for most consecutive games played and that "[t]he possibility of the record being broken and the dramatic effect of the mural should bring a lot of favorable attention to the 28 Light Street address and to the downtown business area in general."

In a memorandum dated November 9, 1993, the Director of the Baltimore City Department of Planning advised the Board that it

> should not consider this proposal as a general advertising sign because to do so would run into several conflicts with existing City policy.
>
> ● Outdoor advertising signs are discouraged and generally not permitted within the Financial District Urban Renewal Plan
>
> ● The size of the proposed mural exceeds the Zoning Ordinance limit of 900 square feet by over 60%
>
> If, however, the Board considers this as a mural, neither of these prohibitions apply and your approval can be specific to this proposal which could then not be changed unilaterally in the future.... Due to the insignificant size of the [Nike] logo and the absence of advertising, consideration of this as a mural would be reasonable.

In its decision filed November 15, 1993 (1993 decision), the Board characterized the application as "a request for authori-

zation to paint a general advertising mural/sign, 23 feet wide by 64 feet high, with a square footage of 1,472...." In addition to summarizing the testimony of MTC officials and the memorandum from the Department of Planning, the Board included a statement from the Department of Housing and Community Development that "[a]lthough the mural is technically an advertising sign, they believe that the merchants and property owners in the area would welcome a display, which gives homage to one of the City's local sports hero [sic]." The Board stated that "the proposal is a reasonable request and would not be detrimental to the area," but would instead "be an asset to the community." It also found that "the proposed mural would not menace or endanger the public health, security, general welfare or morals," and approved the application. In the four paragraphs containing the Board's findings and decision, the Ripken depiction is described as a "mural" five times and the words "advertising" and "sign" are not used. The Ripken depiction was subsequently painted on the wall.

In May 1999, appellant entered into an agreement with Echo, LLC, the owner of 28 Light Street, to replace the Ripken depiction with a sign depicting a Volkswagen Beetle automobile (VW depiction). Under the automobile, the sign depicted the Volkswagen logo and the text "Beetle 2.0" and "VW." In August 1999, the Department of Housing and Community Development issued a Code Violation notice to Echo stating that the VW depiction was a "general advertising sign" erected in violation of the 1993 decision. Appellant applied to the Zoning Administrator for a permit to "retain [the] existing general advertising sign," but that application was denied. Appellant appealed to the Board, characterizing the application as the "[c]ontinuation of existing general sign as approved under" the 1993 decision.

The Board held a hearing on appellant's appeal on January 18, 2000. It noted that the Baltimore City Fire Department and the Baltimore City Bureau of Transportation had no objection to appellant's application, but that the Citizen's Planning and Housing Association was in opposition, reasoning

that "[t]he mural at 28 Light Street was never a general advertising sign, and therefore cannot be retained as such." Appellant explained the history of the Ripken mural, asserting that, because the Ripken depiction fit the definition of a general advertising sign, it was a general advertising sign regardless of the Board's description of it as a mural. Susan Williams, an official from the Department of Planning, testified that the Board's 1993 decision was a determination that the Ripken depiction was art and that the Nike logo was permitted on the depiction only because it was the sponsor thereof. She noted that the VW sign was inconsistent with the Financial District Urban Renewal Plan and the draft version of the Plan Baltimore comprehensive zoning plan.

On January 31, 2000, the Board filed a decision denying appellant's application. It reasoned:

The Board after reviewing [the 1993 decision] finds that [the Ripken depiction] was approved as a mural and the decision reads as follows:

The Board after given [sic] due regard and consideration to the standards under the Ordinance with regard to this mural to be erected on the subject property, feels that the proposal is a reasonable request and would not be detrimental to the area. The Board, in-fact [sic], feels that the mural would be an asset to the community.

Further, the Board found that the mural approved in the prior case was not just another mural, but a mural of a local icon and that the Nike logo was incidental to the mural itself as opposed to the [VW depiction] which is to sell Volkswagen vehicles, clearly making the proposed request and general advertising sign. The Board also finds in reviewing [the 1993 decision] that the previous Board was aware that general advertising signs cannot exceed 900 square feet, that outdoor advertising signs are discouraged in the [F]inancial [D]istrict Urban Renewal Plan, which once again clearly confirms that the Board approved a mural in [the 1993 decision]. The Board finds that the request would be inconsistent with the objective of the sign regulations of the Financial District Urban Renewal Plan, is not in compliance

with Section 10.0–3c1(a) of the Zoning Ordinance and is inappropriate use [sic] of the property.

Appellant sought judicial review of the Board's decision in the Circuit Court for Baltimore City. The court affirmed the decision of the Board in a memorandum opinion and order filed on October 16, 2000. It found that "[t]here is neither factual nor legal basis for disagreeing with [the Board's] 2000 recollection of what it understood itself to have been doing in 1993." The Board had no lawful authority to permit a general advertising sign of more than 900 square feet, however, so that if the Board had approved a general advertising sign in the 1993 decision, it was an unlawful act. The court concluded that such an unlawful approval could not prohibit the Board from correcting its actions by denying appellant's application.

## STANDARD OF REVIEW

We set out the applicable standard for reviewing the decision of an administrative agency in *Eastern Outdoor Advertising Co. v. Mayor and City Council*, 128 Md.App. 494, 514–15, 739 A.2d 854 (1999), *cert. denied*, 358 Md. 163, 747 A.2d 644 (2000):

[C]ourts recognize two standards of review of a decision of a zoning board: one for the board's conclusions of law and another for the board's findings of fact or conclusions of mixed questions of law and fact. When reviewing the board's legal conclusions, the court "must determine whether the agency interpreted and applied the correct principles of law governing the case and no deference is given to a decision based solely on an error of law." When reviewing findings of fact and conclusions regarding mixed questions, however, the circuit court "cannot substitute its judgment for that of the agency and must accept the agency's conclusions if they are based on substantial evidence and if reasoning minds could reach the same conclusion based on the record." If a court finds no substantial or sufficient evidence to support the factual findings of the Board, the

Board's decision will be reversed because it was arbitrary and illegal.

(Citations omitted.) The substantial evidence test is an "assessment of whether the record before the Board contained at least 'a little more than a scintilla of evidence' to support the Board's scrutinized action." *Friends of the Ridge v. Baltimore Gas & Elec. Co.*, 120 Md.App. 444, 466, 707 A.2d 866 (1998), *vacated in part*, 352 Md. 645, 724 A.2d 34 (1999) (citation omitted). The existence of such substantial evidence "pushes the Board's decision into the unassailable realm of a judgment call, one for which we may not substitute our own exercise of discretion." *Id.*

■ Because we repeat the reviewing task of the circuit court under the same standards, we reevaluate the decision of the agency, not that of the court. *Carriage Hill Cabin John, Inc. v. Maryland Health Resources Planning Comm'n*, 125 Md.App. 183, 211, 724 A.2d 745 (1999).

## LEGAL DISCUSSION

### I

Appellant first contends that the Board erred when it held that its 1993 decision did not constitute approval of a general advertising sign. It argues that the Ripken depiction met the definition of a general advertising sign and that, if the depiction truly had been a mural, MTC would not have needed Board approval to paint it. Appellee argues that the Board's continued reference to the Ripken depiction as a "mural" demonstrates that it was not a general advertising sign and that, at any rate, it is too late for appellant to raise issues decided by the Board in 1993.

Under Baltimore City Code art. 30 (Zoning Ordinance), § 10.0–3c, general advertising signs are permitted in the B–4–2 Business District, in which 28 Light Street is located, with certain restrictions and subject to the guidelines and stan-

dards set forth in § 11.0–5a.[1] Subsection 1(a) of § 10.0–3c provides, however, that "[t]he total area of any such sign shall not exceed 900 square feet." The Zoning Ordinance defines a "general advertising sign" as:

A sign which directs attention to a business, commodity, service, event, or other activity which is sold, offered, or conducted somewhere other than on the premises on which such sign is located, or to which it is affixed, and which is sold, offered, or conducted on such premises only incidentally if at all.

Zoning Ordinance § 13.0–2.79. The term "sign," in turn, includes

any ... pictorial representation (including illustration or graphic) [or] emblem (including symbol or trademark) ... which: (a) is ... painted on, or in any way represented on a building ...; and (b) is used to announce, direct attention or advertise; and (c) is visible from outside a building.

Zoning Ordinance § 13.0–2.74.

■ Before deciding whether the Board erred in finding that its 1993 decision was the approval of a mural, we consider what level of deference, if any, we must pay to that finding. We point out that we are to review the Board's decision on the VW depiction, not its 1993 decision on the Ripken depiction. Accordingly, in this case, "we are limited to determining the legality of the decision of the [Board] and whether there was 'substantial evidence' in the record to support its findings and conclusions," with regard to its 2000 decision. *Supervisor of Assessments v. Keeler,* 362 Md. 198, 207, 764 A.2d 821 (2001) (citations omitted). We therefore afford no deference to the Board's characterization of its 1993 decision.

---

**1.** Section 11.0–5a of the Zoning Ordinance provides that "[n]o conditional use shall be authorized unless the Board finds .... that the ... conditional use will not be detrimental to or endanger the public health, security, general welfare, or morals...." The Board is to give consideration to a list of twelve factors, including traffic patterns, the proximity of dwellings, the accessibility of light and air, and any Urban Renewal Plan.

■ The Ripken depiction was unquestionably a general advertising sign within the definition of the Zoning Ordinance. It consisted of an illustration of Ripken and the "swoosh" symbol widely recognized as a Nike trademark. Nike products were not offered at 28 Light Street; indeed, 28 Light Street was vacant at the time. Further, the depiction directed attention to Nike products. The depiction may have been attractive and it may have engendered civic pride in its viewers and brought attention to the downtown business district. Because it fell within the definition of a general advertising sign, however, the Board's approval of a conditional use therefor was the approval of a general advertising sign regardless as to what language was used.

## II

■ Appellant's second contention is that the circuit court erred by giving deference to the Board's legal conclusion that its 1993 decision did not constitute approval of a general advertising sign. We agree.

■ Our review of the court's memorandum opinion reveals that it paid deference to the Board's characterization of its 1993 decision, stating that "[t]here is neither factual nor legal basis for disagreeing with its 2000 recollection of what it understood itself to have been doing in 1993." Later in the opinion, the court refers to the "rationally[-]based conclusion that the original [Board] decision did not constitute approval of a general advertising sign." Because the interpretation of the 1993 decision was a pure question of law, however, the analysis of the court should have involved a determination of "whether the [Board] interpreted and applied the correct principles of law governing the case," *Eastern Outdoor Advertising Co.*, 128 Md.App. at 514–15, 739 A.2d 854 (1999), *cert. denied*, 358 Md. 163, 747 A.2d 644 (2000), not whether substantial evidence existed to support its findings.

In its 1993 decision, the Board mistakenly interpreted the Zoning Ordinances at issue to mean that the distinction between a mural and a commercial was dispositive. Conse-

quently, it allowed the Ripken depiction to remain at 28 Light Street. It is appellant's position that this decision, regardless of the accuracy of the court's reasoning, should allow appellant to place other commercial advertisements at 28 Light Street. We cannot allow such "bootstrapping" to occur. Rather, we hold that, because the 1993 decision was erroneous, the court should not have given any deference to it. The court instead should have applied the correct Zoning Ordinances to the VW commercial advertisement at 28 Light Street.

Pursuant to subsection 1(a) of Zoning Ordinance § 10.0–3c, "[t]he total area of any [general advertising] sign shall not exceed 900 square feet." Because the VW sign was in violation of the Zoning Ordinances of Baltimore City, the trial court should have upheld the Board's decision on this basis, not on the basis of the Board's 1993 decision.

### III

■ Finally, appellant contends that the Board acted arbitrarily and capriciously in treating its application differently than MTC's application for the Ripken depiction and by failing to make sufficient findings of fact to support its conclusions. Appellant argues that its constitutional right to equal protection under the law was denied by the Board's disparate treatment of MTC's application and appellant's application. Because we hold that the Board failed to support its conclusions with sufficient findings of fact, however, we need not address this contention.

The Court of Appeals stated in *Bucktail, LLC v. County Council*, 352 Md. 530, 553, 723 A.2d 440 (1999):

[I]n order for the reviewing court to determine whether the [agency's] action was fairly debatable, findings of fact are required.

Findings of fact must be meaningful and cannot simply repeat statutory criteria, broad conclusory statements, or boilerplate resolutions.

(Citation omitted.) Without such findings, a reviewing court's clumsy alternative is to *read* the record, *speculate* upon the portions which probably were believed by the board, *guess*

at the conclusions drawn from credited portions, construct a *basis* for decision, and try to *determine* whether a decision thus arrived at should be sustained. In the process, the court is required to do much that is assigned to the board, guess at the conclusions drawn from credited portions, construct a basis for decision, and try to determine whether a decision thus arrived at should be sustained.

*Ocean Hideaway Condo. Ass'n v. Boardwalk Plaza Venture,* 68 Md.App. 650, 662, 515 A.2d 485 (1986) (quoting *Gough v. Board of Zoning Appeals,* 21 Md.App. 697, 702, 321 A.2d 315 (1974)).

In Part I, *supra,* we discarded the Board's characterization of its 1993 decision as a proper basis for its denial of appellant's application. We are left with this reason for the decision:

The Board finds that the request would be inconsistent with the objective of the sign regulations of the Financial District Urban Renewal Plan, is not in compliance with Section 10.0–3c1(a) of the Zoning Ordinance and is inappropriate use [sic] of the property.

The Board made only these conclusory statements; no factual findings were made to support them. Although the record contains evidence that the Board's conclusions are true,[2] we would be usurping the Board's role to make our own factual findings based on this evidence. Because the Board's decision is not supported by its factual findings, we reverse the judgment of the circuit court and remand the case for further proceedings.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY VACATED; CASE REMANDED WITH INSTRUCTIONS TO REMAND THE CASE TO THE BALTI-**

---

**2.** We note, for example, that evidence was presented that the VW depiction covered 1,472 square feet, far in excess of the 900 square foot limit for general advertising signs contained in § 1030–3c(1)(a) of the Zoning Ordinance. Had this been made as a factual finding by the Board, it would have constituted a proper basis for the rejection of appellant's application.

MORE CITY BOARD OF MUNICIPAL AND ZONING APPEALS FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.

COSTS TO BE PAID BY THE MAYOR AND CITY COUNCIL OF BALTIMORE.