822 A.2d 478

**SUPERIOR OUTDOOR SIGNS, INC., et al.**

v.

**ELLER MEDIA COMPANY, et al.**

**No. 2545, Sept. Term, 2001.**

Court of Special Appeals of Maryland.

April 30, 2003.

480

482

484

Hugh Cropper, IV (Anderson Coe & King, LLP, on brief), Ocean City, for appellants.

Paul D. Wilber (Cynthia Brubaker MacDonald, Webb, Burnett, Jackson, Cornbrooks, Wilber, Vorhis & Douse, LLP, on brief), Salisbury, for appellees.

Argued before SONNER, DEBORAH S. EYLER and MARVIN H. SMITH (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, J.

The Board of Zoning Appeals of the Town of Willards ("Board") granted variances to Eller Media Company ("Eller") and E. Dean W. Richardson, the appellees, allowing them to replace two existing non-conforming billboards and to erect

two new billboards on property on Route 50 ("the Subject Property"), in Wicomico County. In the Circuit Court for Wicomico County, Superior Outdoor Signs, Inc. ("Superior"), and Scott P. Gregory, the appellants, brought an action for judicial review of the Board's decision. The court affirmed the decision.

On appeal, the appellants contend the court's ruling was in error because there was no showing of unwarranted hardship, as required by the Town of Willards's zoning ordinance. The appellees have moved to dismiss the appeal for lack of standing. Alternatively, they contend the Board's decision should be upheld because it was supported by substantial evidence, including evidence of unwarranted hardship.

For the following reasons, we shall grant the appellees' motion to dismiss the appeal.

## FACTS AND PROCEEDINGS

The Subject Property, which is owned by Richardson and others, is a 400–feet–wide strip of land, occupying 25.11 acres, that is bordered on the north by the easterly lanes of Route 50 and on the west by Bent Pine Road. The Subject Property is in the Town of Willards, on the edge of town.[1] It is zoned Commercial.

Eller Media Company leases the Subject Property from its owners for the placement and maintenance of billboards that are visible from the easterly lanes of Route 50. Two billboards have been situated on the Subject Property for decades, since before the Town of Willards enacted a zoning ordinance.

Under section 12 of the Town of Willards's zoning ordinance, "outdoor advertising structures," *i.e.*, billboards, are permitted uses in the Commercial Zone, with certain restrictions for setback, spacing, structure type, sign area, distance from residential district, lighting, and height. Pursuant to

---

1. The Subject Property was annexed by the Town of Willards in 1999.

section 22(B)(2) of the zoning ordinance, the Board may grant variances from these restrictions. Under section 19 of the zoning ordinance, the billboards that have been situated on the Subject Property are legal, non-conforming uses.

The appellees applied for building permits to replace the original billboards with monopole billboard structures. Because the replacement structures were considered upgrades to a non-conforming use, which require approval by the Board under section 19 of the zoning ordinance, the permits were denied. In addition, the appellees applied for building permits to erect two new billboards and allow all four billboards on the Subject Property to vary from the setback, spacing, and sign area restrictions required by the zoning ordinance. Those building permits also were denied. The appellees then filed applications for variances with the Board.

The Board held a public hearing on the appellees' application for variances. After hearing from those in favor of the application and those opposed, the Board members deliberated and voted to grant the variances for the existing billboards and to grant some of the other requested variances, so as to permit construction of two new billboards.

In an action for judicial review in the Circuit Court for Wicomico County, the appellants argued that the Board's decision was not supported by substantial evidence of an unwarranted hardship so as to justify its granting the variances. As we shall discuss below, the appellees moved to dismiss the action on the ground that the appellants lacked standing. They also responded on the merits by arguing that the Board's decision was supported by substantial evidence and was made in accordance with the town's zoning ordinance.

The circuit court held a hearing and found that the Board's decision was supported by substantial evidence. It issued a written order and entered judgment in favor of the appellees. The appellants then noted a timely appeal to this Court.

We shall include additional pertinent facts in our discussion.

## DISCUSSION

The appellees have moved to dismiss this appeal on the ground that Superior and Gregory lack standing. They contend that Superior and Gregory can have standing to appeal to this Court only if at least one of them had standing to bring the action for judicial review in the circuit court, and that neither had standing to bring that action.

The Town of Willards is a municipal corporation. Among its enumerated express powers is the power to "provide reasonable zoning regulations subject to the referendum of the voters at regular or special elections." Md.Code (2001), art. 23A, section 2(b)(30). Under Md.Code (1998 Repl.Vol., 2001 Supp.), art. 66B, which governs land use, *i.e.*, planning, zoning, and development, except in chartered counties,[2] a local legislative body, including the elected body of a town, *see* section 1(f), is further authorized to adopt planning, zoning, and development ordinances and regulations. Art. 66B, § 4.01(a) and (b). Pursuant to section 4.07(a)(1), each local legislative body must provide for the appointment of a board of appeals which has, among its general powers, that of authorizing in specific cases variances from the terms of the local jurisdiction's zoning ordinance. Art. 66B, § 4.07(d)(3).

Appeals to the circuit court from the decision of a local board of appeals, including boards of local jurisdictions and municipalities other than Baltimore City, and appeals thereafter to this Court, are governed by article 66B, section 4.08.[3] That statute states, in relevant part:

(a) *Who may appeal; procedure.*—(1) Any of the following persons may, jointly or severally, appeal a decision of a board of appeals ... to the circuit court of the county:

(i) A person aggrieved by the decision ...;

(ii) Any taxpayer; or

---

**2.** Section 1.02 of article 66B provides that the article applies to chartered counties in some limited situations.

**3.** Appeals of decisions by the Baltimore City Board of Municipal and Zoning Appeals are governed by art. 67B, section 2.09.

(iii)Any officer, department, board, or bureau of the local jurisdiction....

* * * * * *

(e) *Decision of circuit court; appeal to the Court of Special Appeals; costs.*—(1) After deciding an appeal under this section, the circuit court shall file a formal order embodying its final decision. (2)(i) A party may file an appeal from the decision of the circuit court with the Court of Special Appeals, during the period and in the manner prescribed by the Maryland Rules....

Thus, under section 4.08(a), a person may bring a circuit court action for judicial review of the decision of a board of appeals if he is "aggrieved" by it, *or* he is "any taxpayer," *or* if he is within the category of persons listed in subsection (iii) (which is not at issue here). *Boulden v. Mayor & Comm'rs,* 311 Md. 411, 535 A.2d 477 (1988); *Stephans v. Bd. of County Comm'rs,* 41 Md.App. 494, 397 A.2d 289, *rev'd on other grounds,* 286 Md. 384, 408 A.2d 1017 (1979); *Clise v. Phillips Coal, Inc.,* 40 Md.App. 609, 392 A.2d 1177 (1978). And under section 4.08(e), a person may appeal the circuit court's decision in an action for judicial review if he was a party, *i.e.,* a proper party, to the circuit court action. *Clise, supra,* at 613, 392 A.2d 1177.

## A.

### Facts Pertinent to the Issue of Standing

There is no mention of Superior in the agency record.

The agency record reveals that Gregory·attended the hearing before the Board. He signed the attendance sheet, "Scott Gregory Property Owner (Willards), [telephone number], Bishopville." He briefly testified, identifying himself as "a property owner of Delaware Sign Company" and stating his opposition to the application for variances. Testimony by others established that Delaware Sign Company, Inc. ("DSC"), owns a parcel of land in the Town of Willards adjacent to and west of the Subject Property, across Bent Pine Road. Like the

Subject Property, DSC's parcel is zoned Commercial, borders on the easterly lanes of Route 50, and contains several billboards.

The petition for judicial review filed in the circuit court is captioned:

> IN THE CIRCUIT COURT FOR WICOMICO COUNTY PETITION OF SUPERIOR OUTDOOR SIGNS, INC. AND SCOTT GREGORY 1305 S. SALISURY BOULEVARD SALISBURY, MARYLAND 21801 FOR JUDICIAL REVIEW OF THE DECISION OF THE BOARD OF ZONING APPEALS, TOWN OF WILLARDS, WICOMICO COUNTY, ... DATED JUNE 19, 2001 REGARDING ELLER MEDIA COMPANY/DEAN RICHARDSON, ET AL.

It is entitled, "Notice of Appeal," and is one paragraph long. The petition does not give an address for Gregory, other than to include him in the Salisbury address given for Superior. (The docket entries post Superior's address as the Salisbury address in the caption and post no address for Gregory.) The petition states: "Appellants were parties to the agency proceeding."[4]

In the appellants' Rule 7–207 memorandum, Gregory included himself among those who had opposed the application for variances before the Board. He did not set forth any statement or allege any facts about his aggrievement status, if any, or his taxpayer status, if any.

The appellees filed a Rule 7–207 memorandum that included a motion to dismiss for lack of standing. They took the position that neither Superior nor Gregory was a party to the proceeding before the Board and that neither had made an allegation, either before the agency or in a circuit court petition, about being in any way aggrieved or being "any taxpayer."[5]

---

4. In fact, as noted above, the record shows that Superior was not a party to the agency proceeding.

5. In this appeal, the appellees have abandoned the argument that Gregory was not a party to the Board proceedings.

The appellants did not file a reply memorandum or a response to the motion to dismiss for lack of standing.

During the hearing before the circuit court, the appellants' lawyer acknowledged in response to a question from the bench that Superior was not a proper party to the action for judicial review. He asserted that Gregory had standing to bring the action, however, because he is a taxpayer living in Worcester County and working in Salisbury who "drives by there," that is, the Subject Property. When the court made known that it was unimpressed by those proffered bases for standing, the appellants' lawyer further proffered that Gregory owns DSC, which in turn owns the land next to and west of the Subject Property. The appellees' lawyer objected to the proffer, saying, "I think John Howard Burbage is the owner of Delaware Sign Company." [6] The appellants' lawyer then moved on to the merits of the appeal.

When counsel for the appellees addressed the court, he discussed the issue of standing as follows:

An aggrieved party is someone who has suffered ... a special damage to a property right or a personal right is the way the language in the cases read.

And the record is devoid of any testimony from Mr. Gregory that he is aggrieved in any way, shape, or form. I think his testimony is he had a hard time getting his variances on all the string of signs to the west of [the Subject Property], but as far as him being aggrieved in any way, shape or form, there is no evidence in this record at all. He is not a tax payer in the Town of Willards and nor is Superior Signs a tax payer in the Town of Willards to the best of our information.

That being the case, there is no standing for either Mr. Gregory or Superior Signs to maintain this appeal. In that

---

6. At that point in the proceedings, counsel for the appellants moved to substitute DSC as a party, under Md. Rule 2–213, on the basis of misjoinder, representing that DSC had participated as a party in the proceeding before the Board. The circuit court denied the motion and that ruling is not challenged on appeal.

*Bryniarski* [*v. Montgomery County Bd. of Appeals,* 247 Md. 137, 230 A.2d 289 (1967),] case that we have cited in our memo, a statement there is a person whose sole reason for objecting to the Board's action is to prevent competition with his established business is not a person aggrieved.

Even though he didn't make any statement about how he was aggrieved, if you wanted to infer how he thinks he was aggrieved, I think Eller Media would be regarded as his competitor. He has the signs to the west of Bent Pine Road. Eller has the signs to the east of Bent Pine Road.

He then repeated his request to the court to dismiss the case for lack of standing.

After counsel for the appellees had concluded his argument on the merits, counsel for the appellants on rebuttal pointed to a reference in the Board's hearing transcript in which Richardson, responding to Gregory's brief remarks, called him a "neighbor."

The court did not make an express ruling on the motion to dismiss. After remarking, "I think there is a real issue as to the standing," the judge went on to conclude that there was substantial evidence to support the Board's decision to grant the variances, and affirmed the decision on that basis.

In this Court, in support of their motion to dismiss, the appellees have filed an affidavit by Gloria Smith, the Secretary of the Town of Willards, attesting that she maintains the town's real property tax records, that she has reviewed them, and that neither Superior nor Gregory owns real property within the town.

In their reply brief, the appellants have submitted an affidavit by Gregory in which he attests, *inter alia,* that he is a 50% owner of DSC; that DSC's property in the Town of Willards is adjacent to the Subject Property, and the Subject Property and the billboards on it are visible from the DSC property; that he manages the DSC property and "derive[s] a substantial portion of [his] livelihood from income generated by that property"; and that, because he either is present next to the Subject Property or drives past it on a daily basis, additional

billboards on the Subject Property will have an' effect on him personally and on DSC different than their effect on members of the public at large. Gregory acknowledges in his affidavit that he lives and pays real property taxes in Bishopville, in Worcester County.

## B.

### *Standing of Superior*

The appellants concede that Superior did not have standing to bring the circuit court action for judicial review of the Board's decision and therefore lacks standing to bring this appeal. There are no facts in the record to show that Superior has "aggrieved person" or "any taxpayer" status. In their reply brief in this Court, in which they respond to the motion to dismiss, the appellants do not argue that Superior has standing. Finally, at oral argument, counsel for the appellants candidly acknowledged to this Court that Superior does not have standing.[7]

## C.

### *Standing of Gregory*

■ Whether this appeal is properly before us, then, depends upon whether Gregory has standing. A party's standing to appeal either to this Court or to a circuit court from the decision of a zoning board is a question of law, which we decide *de novo*. *See generally Lucas v. People's Counsel*, 147 Md.App. 209, 224–25, 807 A.2d 1176 (2002); *Eller Media Co. v. Mayor of Baltimore*, 141 Md.App. 76, 83, 784 A.2d 614 (2001); *E. Outdoor Adver. Co. v. Mayor & City Council*, 128 Md.App. 494, 514, 739 A.2d 854 (1999).

---

7. In their reply brief, the appellants moved this Court, pursuant to Md. Rule 2–341(c)(4), to amend what they say was a misnomer, *i.e.*, that Superior was named in the petition for judicial review instead of DSC. Their counsel withdrew that motion during oral argument. This Court would not have the authority to grant such a request in any event.

Gregory contends he had standing to bring the circuit court action, either as an "aggrieved person" or as "any taxpayer," under art. 66B, section 4.08(a), and hence he has standing to appeal to this Court. As a preliminary matter, Gregory asserts that, because the issue of standing was not decided by the circuit court, we should not address it; and that the issue was waived by the appellees because they did not file a cross-appeal.

### (i)

### *Preservation of the Standing Issue*

Maryland Rule 8–131(a) provides that, ordinarily, this Court will not address an issue that was not raised in *or* decided by the circuit court. As the chronology of proceedings we have set forth makes plain, the appellees raised the issue of standing in the circuit court. Their having done so preserved the issue for appellate review, notwithstanding that the court did not expressly rule on it. Moreover, it was not necessary for the appellees to note a cross-appeal on the issue of standing for this Court to address the question of standing that was raised below. We so held in *Sipes v. Board of Municipal Zoning Appeals,* 99 Md.App. 78, 635 A.2d 86 (1994), a case having a similar procedural posture to this one.

In *Sipes,* certain community associations and public interest groups ("organizations") and an intervenor taxpayer sought appellate review of a circuit court decision affirming a decision by a Baltimore City zoning board granting an application to change an existing conditional use. The applicant moved to dismiss the circuit court action on the ground that the plaintiffs lacked standing. The court did not rule on the motion. Instead, it permitted the intervenor to join the case as a party, even though the motion to intervene was untimely.

On appeal, the applicant and the zoning board challenged the organizations' standing to bring the circuit court action, but did not file a cross-appeal. We explained that it was not necessary for them to take a cross-appeal to raise that issue:

Although the issue of standing may not be jurisdictional in nature, it does go to the very heart of whether the controversy before the court is justiciable. If the controversy is nonjusticiable, it should not be before the court, and therefore must be dismissed. The failure of a party to file a notice of cross-appeal does not prevent an appellate court from considering whether the lower court had, or the appellate court has, jurisdiction over the case. By the same token, it should not prevent us from considering the issue of standing in this case, especially where the appellees raised the issue in the circuit court.

*Id.* at 87–88, 635 A.2d 86 (citations omitted).

With that, we shall turn to the merits of the standing argument.

### (ii)

### *"Aggrieved Person" Standing*

In *Maryland–National Capital Park & Planning Commission v. Smith,* 333 Md. 3, 633 A.2d 855 (1993), the Court of Appeals explained the meaning of "aggrieved person" standing:

The rule for determining who is aggrieved in administrative appeals is well settled. In *DuBay v. Crane,* [240 Md. 180, 185, 213 A.2d 487 (1965)], we said:

In zoning cases, the rule in this State is that for a person to be aggrieved by an adverse decision of the administrative agency, and thus entitled to appeal to the courts, *the decision must not only affect a matter in which the protestant has a specific interest or property right but his interest therein must be such that he is personally and specifically affected in a way different from that suffered by the public generally.*

333 Md. at 3, 633 A.2d 855 (emphasis in original; footnote omitted). *See also Bryniarski v. Montgomery County Bd. of Appeals, supra,* 247 Md. 137, 230 A.2d 289 (same, addressing standing to appeal to circuit court from a decision of the board of appeals of a chartered county, under art. 25A, section 5U).

Thus, the "aggrieved person" standard is a two-part test in which the plaintiff first must show that he has a personal or property interest that will be adversely affected by the zoning decision and then must show that the harm to that interest from the zoning decision is distinct from the harm to the general public from the zoning decision. *Cylburn Arboretum Ass'n v. Mayor & City Council*, 106 Md.App. 183, 188–89, 664 A.2d 382 (1995) (same, addressing standing to appeal to circuit court from a decision of the Baltimore City Board of Municipal and Zoning Appeals, under art. 66B, section 2.09(a)).

Gregory rests his claim of "aggrieved person" status on one property interest and two personal interests. His claimed property interest is in DSC's real property, which, as noted, is adjacent to the Subject Property. Gregory maintains that he is a 50% owner of DSC and therefore is a 50% owner of DSC's real property. He asserts that Richardson's having called him a "neighbor" during the agency hearing lends support for his having a property interest in DSC's land.

Gregory's claimed personal interests are in maintaining the income he derives from the DSC property (apparently from leasing the billboards on it) and in maintaining a daily visual exposure to less, rather than more, billboards when he is on DSC's grounds and the billboards on the Subject Property are in view and when he is driving by the Subject Property.

### Gregory's Claimed Property Interest

 It is well established that the owner of property adjacent to property that is the subject of a zoning decision is *prima facie* an "aggrieved person," within the meaning of those statutes conferring standing to appeal, such as art. 66B, section 4.08(a). In *Bryniarski v. Montgomery County Bd. of Appeals, supra*, 247 Md. 137, 230 A.2d 289, the Court summarized the general principles governing "aggrieved person" standing in appeals under provisions of zoning ordinances, stating, *inter alia*, that

[a]n adjoining, confronting or nearby property owner is deemed, *prima facie*, to be specially damaged and, therefore, a person aggrieved. The person challenging the fact

of aggrievement has the burden of denying such damage in his answer to the petition for appeal and of coming forward with evidence to establish that the petitioner is not, in fact, aggrieved.

*Id.* at 145, 230 A.2d 289.

To be sure, as the owner of property adjacent to the Subject Property, DSC was *prima facie* "aggrieved" by the Board's zoning decision within the meaning of section 4.08(a). DSC did not bring an action for judicial review of the decision, however, and so was not a party in the circuit court and is not a party on appeal. In the circuit court, Gregory did not present any evidence that he is an owner of DSC (50% or otherwise). When his lawyer proffered that Gregory is the owner of DSC, the appellees objected, their counsel voicing the view that another person owns that company.

■ As noted, in this Court, Gregory has submitted an affidavit attesting that he is "the 50% owner of [DSC]." Whether he had standing in the circuit court, and hence whether that court should have granted the appellees' motion to dismiss, was a function of the evidence in the record then, not now, and as an appellate court, it is not our role to accept evidence in any event. When the issue of standing depends on the resolution of disputed facts, it is proper practice for the circuit court to take evidence on the issue from the parties and make the factual findings necessary to the decision. *Town of Somerset v. Montgomery Cty. Bd. of Appeals,* 245 Md. 52, 63, 225 A.2d 294 (1966) (holding that, "[w]hen the issue of standing of an appellant to appeal is raised in the court in which review of the administrative action is asked, we have approved the practice of trial judges in permitting testimony on the point to be taken before them. . . . The question is not one of taking additional testimony on the merits of the substantive issues decided by the Board . . ., but of determining whether the appellants have the requisite standing to have those issues reviewed.") (citations omitted).

■ In this case, notwithstanding the court's comment suggesting that the proceeding before it was not one in which

evidence properly could be taken, the court could have permitted that to occur, either then, if the parties were present, or at a later time if they were not.[8] If the resolution of the dispute over Gregory's ownership interest *vel non* in DSC were determinative of Gregory's aggrieved person status issue, we would remand the case to the circuit court to take evidence and make a finding. We conclude, however, that, even if Gregory were an owner of DSC, that does not mean he has an ownership interest in DSC's land; and therefore that would not give him aggrieved person status for purposes of section 4.08(a)(i).

▬ A corporation is a legal entity separate from its shareholders. *See U.S. v. Brager Bldg. & Land Corp.*, 124 F.2d 349 (4th Cir.1941) (applying Maryland law). When a corporation takes title to real property, it holds that property in its own name and right. *Dates v. Harbor Bank*, 107 Md.App. 362, 370, 667 A.2d 1007 (1995). A corporation's shareholders do not hold title to its real property, and therefore do not own it. Accordingly, even assuming that Gregory is an owner, *i.e.*, a shareholder, in DSC, that does not mean he is an owner of DSC's real property, including the property adjacent to the Subject Property.

In *Menges v. Township of Bernards*, 4 N.J. 556, 73 A.2d 540 (1950), the Supreme Court of New Jersey held that the president and principal stockholder of a corporation that owned land alleged to have been injuriously affected by a zoning action of the township did not own the corporation's real property and hence did not have aggrieved person standing as a property owner. The court expressly rejected as "insubstantial" the argument that "in so far as the injury affects the property of the corporation it affects the stockholders' interest therein and as such the plaintiffs ... will suffer

---

8. The fact that one of the appellees referred to Gregory as a "neighbor" during the hearing before the Board certainly was not competent evidence to prove that Gregory was an owner of DSC or its property. "Neighbors" need not be property owners.

special injury beyond that which will affect them in common with the remainder of the public." *Id.* at 558, 73 A.2d 540.

In short, Gregory is not an "aggrieved person" by virtue of ownership of DSC's real property adjacent to the Subject Property because he does not own DSC's real property.

### Gregory's Claimed Personal Interests

As noted, Gregory maintains that he has a personal interest that will be affected adversely by the zoning decision in this case because he is a part owner of DSC, manages the company, and depends upon the success of the company for his personal financial well-being.[9] He also claims as an affected personal interest that he is present on the DSC property, next. to the Subject Property, on a daily basis, and drives by the Subject Property daily.

There are limits on the nature of the requisite affected interest of a protestant for purposes of being "aggrieved" by a zoning decision. The prevention of competition is not a proper element to be considered in zoning decisions. *Kreatchman v. Ramsburg,* 224 Md. 209, 219, 167 A.2d 345 (1961). Accordingly, a person is not "aggrieved" for standing purposes when his sole interest in challenging a zoning decision is to stave off competition with his established business. *Id.* at 220, 167 A.2d 345 (commenting that, "[i]n appeals from zoning boards, a competitor is usually not regarded as an 'aggrieved party.' "); *Bryniarski, supra,* 247 Md. at 145, 230 A.2d 289. *See also Aspen Hill Venture v. Montgomery County Council,* 265 Md. 303, 314, 289 A.2d 303 (1972); *Eastern Serv. Ctrs., Inc. v. Cloverland Farms Dairy, Inc.,* 130 Md.App. 1, 9, 744 A.2d 63 (2000) (dismissing appeal on ground that gas station company's sole motive in challenging the issuance of a zoning construction permit to another gas station company one block away was to prevent competition).

---

**9.** To some extent, this interest could be characterized as a property interest, as it is economic. How it is characterized does not affect our analysis.

It is not the function of county zoning ordinances to provide economic protection for existing businesses. Neither the fact that the parties may suffer reduced incomes or be put out of business by more vigorous or appealing competition, nor the fact that properties on which such businesses are operated would thus depreciate in value, give rise to a standing to sue.

*Swain v. County of Winnebago,* 111 Ill.App.2d 458, 467, 250 N.E.2d 439 (1969) (citing, *inter alia, Kreatchman v. Ramsburg, supra,* 224 Md. at 220, 167 A.2d 345 (internal citations omitted)).

■ DSC and the appellees are competitors in the same business. DSC leases its property on Route 50 for the placement of billboards for profit; the appellants own and use the Subject Property to operate a like business, also for profit. The zoning decision in this case permitted the appellees to lease more billboards than DSC—and may give them a competitive advantage. Gregory's concern is that any such increased competitive advantage will result in a decrease in the income he derives from DSC (whether as its owner, allegedly, or as an employee/manager). Plainly, Gregory's claimed personal interest in the zoning action for the Subject Property is precisely the sort of interest in eliminating competition that zoning laws are not meant to protect, and is not a basis for "aggrieved person" status standing under section 4.08(a)(i).

■ The other personal interests Gregory cites also do not afford a basis for "aggrieved person" standing. For an affected interest to furnish a basis for aggrieved person standing, the interest must be legally protected. Thus, just as an impact on a person's property interest affords a basis for standing, an impact on a person's interest arising out of contract, protected from tortious invasion, or founded on a statute that confers a privilege likewise provides a basis for standing. *Cf. Comm. for Responsible Dev. v. Mayor & City Council,* 137 Md.App. 60, 72, 767 A.2d 906 (2001) (addressing standing to bring a declaratory judgment action).

■ Gregory does not own property adjacent to or near the Subject Property and does not reside adjacent to or near the Subject Property. For the reasons we have explained, Gregory's anti-competitive interest in there being no more than two billboards on the Subject Property is not protected by the zoning laws. Gregory's claimed interest in limiting the number of billboards visible from his employer's property is not contractual, tort-based, or based on a statutory right or privilege. Accordingly, that claimed interest is not a ground for standing to challenge the Board's zoning decision respecting the Subject Property. For the same reason, his status as a person who drives by the Subject Property daily does not implicate a personal interest sufficient to confer standing to challenge the Board's zoning decision. (Even if it did—which it does not—he could not show that his interest was specially affected beyond any such interest of members of the general public.)

### (iii)

### *"Any Taxpayer" Standing*

Gregory argues that, even if he is not an "aggrieved person" for standing purposes, he has "any taxpayer" standing, under art. 66B, section 4.08(a)(ii), on two separate bases: first, as a 50% owner of DSC, he "pays property taxes" on DSC's real property in the Town of Willards; and second, he pays property taxes on real property he owns in Bishopville in Worcester County. We disagree that Gregory has standing as "any taxpayer" within the meaning of the controlling statute.

As explained above in our discussion of "aggrieved person" standing, Gregory did not present evidence to the circuit court to show that he is an owner of DSC. Had he done so, however, that evidence would not have provided a proper basis for "any taxpayer" standing.

■ In ascertaining the meaning of "any taxpayer" standing under section 4.08(a)(ii), we apply the well-established rules of statutory construction. The cardinal rule is to ascertain and effectuate legislative intent. *Gillespie v. State,*

370 Md. 219, 804 A.2d 426 (2002). To that end, we must begin our inquiry with the words of the statute. Ordinarily, when the statutory language is clear and unambiguous, we end our inquiry there, giving the words their plain and ordinary meaning. *Dyer v. Otis Warren Real Estate Co.*, 371 Md. 576, 581, 810 A.2d 938 (2002). When the words of a statute are plain, we may neither add nor delete language so as to reflect a legislative intent that the language does not reflect. *Id.* When the statute to be interpreted is part of a statutory scheme, we read it in context, together with the other statutes on the same subject, harmonizing them to the extent possible. *Mid–Atlantic Power Supply Ass'n v. Pub. Serv. Comm.*, 361 Md. 196, 204, 760 A.2d 1087 (2000).

■■■ The common-sense meaning of the term "any taxpayer" in section 4.08(a) encompasses taxpayers that are individuals *and* those that are entities, such as corporations. It is undisputed that DSC is a corporation and that it owns the real property adjacent to the Subject Property. As discussed *supra*, it is fundamental that DSC, not Gregory, is the owner of DSC's real property. Accordingly, DSC, not Gregory, is legally responsible for paying the property taxes on the property. *See* Md.Code (2001 Repl.Vol.) section 10–401 of the Tax–Property Article (stating that, "[e]xcept as otherwise provided in this subtitle, the owner of property on the date of finality is liable for property tax that is imposed on that property for the following taxable year").

■■■ Whether Gregory owns one share of DSC stock or a controlling interest in the company, he cannot disregard the corporate entity for purposes of claiming taxpayer status. While, as we shall explain, DSC's status as a property taxpayer in the Town of Willards most certainly would afford it "any taxpayer" status for purposes of section 4.08(a)(ii), that status does not afford Gregory or any other stockholder of the company such status.

As noted, the record of the agency contains facts showing that Gregory's address is in Bishopville, in Worcester County. Before the circuit court, Gregory's counsel proffered that

Gregory owns the property on which he lives, and pays property taxes on that property; and the proffer was accepted. Thus, the record contains facts showing that Gregory pays property taxes—but not to the Town of Willards.[10]

In *Boulden v. Mayor & City Council, supra,* 311 Md. 411, 535 A.2d 477, the Court of Appeals clarified that, under section 4.08(a), a person who is "any taxpayer" automatically has standing to appeal; in other words, taxpayer status alone, without aggrievement, confers standing to appeal. *Id.* at 414, 535 A.2d 477 (approving *Stephans v. Bd. of County Comm'rs, supra,* 41 Md.App. at 498, 397 A.2d 289, and *Clise v. Phillips Coal, Inc., supra,* 40 Md.App. 609, 613, 392 A.2d 1177). In *Boulden,* the party whose standing was in question was a taxpayer by virtue of his ownership of real property in the municipality whose zoning action he was challenging. There was no question but that, as a taxpayer of the local jurisdiction, he qualified as "any taxpayer" under section 4.08(a). *See also Stocksdale v. Barnard,* 239 Md. 541, 212 A.2d 282 (1965) (holding that owners of property in Baltimore County had taxpayer status standing to challenge zoning action by the county's board of zoning appeals); *Windsor Hills Improvement Assoc. v. Baltimore,* 195 Md. 383, 73 A.2d 531 (1950) (recognizing that president of homeowners' association who himself owned property in Baltimore City had taxpayer status standing to challenge zoning action by City's board of zoning appeals).

By contrast, in the case at bar, Gregory does not own real property in the Town of Willards and does not pay real property taxes to the town. Rather, he owns real property inside Maryland but outside the Town of Willards, and pays

---

**10.** It was not necessary for the appellees to submit an affidavit to this Court to show that Gregory does not pay property taxes to the Town of Willards. As noted above, we are an appellate court, and do not take evidence and make findings. In the proceedings below, however, Gregory did not put forth any evidence to show that he pays taxes to the town. Moreover, that issue was undisputed—neither party contended that Gregory pays real property taxes (or any taxes) to the Town of Willards.

real property taxes to governmental entities other than the Town of Willards. Gregory takes the position that the phrase "any taxpayer" in section 4.08(a)(ii) should be read broadly to cover a real property taxpayer in *any* jurisdiction in Maryland, not just a property taxpayer in the local jurisdiction in which the board is authorized to act. Thus, to have "any taxpayer" standing to challenge a zoning decision or action by a local municipality under that statute, a person need not be a taxpayer of that municipality. To be sure, a literal reading of the words "any taxpayer" would cover not only any taxpaying entity (individual, corporate, etc.), but also any property taxpayer wherever the property or the taxpayer might be located. Indeed, as Gregory's counsel acknowledged in response to questions from the bench in oral argument in this Court, a literal reading of "any taxpayer" also would include payers not only of property taxes, but of any kind of tax—sales, income, estate and gift, etc.

Our function, however, is to determine what the General Assembly meant by the words "any taxpayer" in section 4.08(a). That section must be interpreted in its context. It is part of art. 66B, which governs land use in non-chartered local jurisdictions, including municipalities. And it is pursuant to the express power granted municipalities under art. 23A, section 2(b)(30) of the Code, to reasonably regulate zoning and development, and to art. 66B, that the local legislative body of the Town of Willards enacted the zoning ordinance applicable to real property within the town limits, including the Subject Property.

Section 4.08 is a standing statute. Standing "is a practical concept designed to insure that courts and parties are not vexed by suits brought to vindicate nonjusticiable interests and that judicial decisions which may affect the rights of others are forged in hot controversy, with each view fairly and vigorously represented." 4 Arden H. Rathkopf, *et al., Rathkopf's, The Law of Zoning and Planning,* § 63:3 n. 1 at 63–65 (4th ed.2001) (quoting *DiBonaventura v. Zoning Bd. of Appeals,* 24 Conn.App. 369, 373–74, 588 A.2d 244 (1991), in

turn quoting *Bd. of Pardons v. Freedom of Info. Comm'n,* 210 Conn. 646, 649, 556 A.2d 1020 (1989)).

▮▮▮▮▮ The essential purpose of section 4.08, therefore, is to define the world of people and entities who have an affected interest in a zoning decision by a local board of appeals, including the board of appeals of a municipal corporation, and therefore may lodge a judicial challenge to it. By definition, under the two-part test for aggrievement discussed above, one who is "aggrieved" by such a zoning decision has an interest in it. As explained, aggrievement requires an additional showing that the person's interest is specially affected by the decision. While under section 4.08(a), the world of interested people and entities is not limited to those who are aggrieved, as the Court made plain in *Boulden,* it is implicit that "any taxpayer" in that statute means a taxpayer who, because of his status as such, has an interest that could be affected by the zoning decision. The taxpayer need not show that his interest is specially affected, however.

▮▮▮▮▮ The type of taxpayer who has an interest that could be affected by the zoning decision of a local board of appeals is a property taxpayer within that jurisdiction. Municipalities have the power to tax, as conferred by Article XI–E of the Maryland Constitution and subject to certain statutory limitations, art. 23A, section 2(b)(33), of the Code, *see Griffin v. Anne Arundel County,* 25 Md.App. 115, 126, 333 A.2d 612 (1975); and the power of a municipality to levy a real property tax is expressly granted pursuant to section 6–203 of the Tax–Property Article. It is fundamental that zoning concerns the regulation of land use; and it is the policy of this State that such regulation will occur at the local level. *See* art. 23A, section 2(b)(36)(ii) (stating that "[i]t has been and shall continue to be the policy of this State that planning and zoning controls shall be implemented by local government."). Because local jurisdictions have the power to regulate land use, and to levy real property taxes, the real property taxes assessed against a property owner in the local jurisdiction may be affected by land use decisions and actions taken by the

jurisdiction. Thus, in a general way, such a taxpayer has an interest in the zoning decisions of the local jurisdiction. One who pays property tax to another local jurisdiction, and not to the jurisdiction making the zoning decision, does not have such an interest.

When read in its proper statutory context, the phrase "any taxpayer," in section 4.08(a)(ii), means any person, including an entity, who pays real property taxes to the local jurisdiction whose zoning action is being challenged on appeal. Accordingly, Gregory's status as a payer of real property taxes outside the Town of Willards did not afford him "any taxpayer" standing under the controlling statute.

**APPEAL DISMISSED.**

**COSTS TO BE PAID BY THE APPELLANTS.**